UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OCEANA, INC.,
        Plaintiff,
    v.
PENNY PRITZKER, et al.,
        Defendants.

Case No.16-cv-06784-LHK (SVK)

**ORDER ON OCEANA'S MOTION TO COMPEL COMPLETION OF ADMINISTRATIVE RECORD**

Re: Dkt. No. 35

Plaintiff Oceana, Inc. challenges a final rule setting annual catch limits for the central subpopulation of the northern anchovy (the "Rule")[1] promulgated by the National Marine Fisheries Service ("NMFS"). Oceana brings its challenge under the Administrative Procedures Act ("APA"), 5 U.S.C. § 701 *et seq.*, and the Magnuson-Stevens Fishery Conservation and Management Act ("Magnuson Act"), 16 U.S.C. § 1801 *et seq.* In response to Oceana's challenge, defendants prepared and filed an Administrative Record ("AR") with the Court on February 17, 2017. ECF 26. Before this Court is Oceana's motion to compel defendants to complete the administrative record by adding three categories of materials:

    (1)    Data collected through acoustic trawl sampling during summer 2015, analyses of that data, correspondence discussing or conveying such analyses, and drafts of the paper entitled "The Distribution and Biomass of the Central-Stock Northern Anchovy during Summer 2015, Estimate from Acoustic-Trawl Sampling," which NMFS presented to the Pacific Fishery Management Council

---

[1] 81 Fed. Reg. 74,309 (Oct. 26, 2016). The Court notes that the version of the October 26, 2016 Federal Register notice of the final rule in the existing administrative record as presented to the Court, AR 198, is incomplete because it is missing pages 74,310 and 74,312 of the Federal Register notice.

|   |     |                                                                                     |
|---|-----|-------------------------------------------------------------------------------------|
|   |     | (the "Council") in November 2016 (the "ATS Materials");                             |
|   | (2) | An NMFS report entitled "Review and Re-evaluation of Minimum Stock Size Thresholds for Finfish in the Coastal Pelagic Species Fishery Management Plan for the U.S. West Coast" (August 22, 2016), prepared by the agency's Southwest Fisheries Science Center (the "SST Report"); and |
|   | (3) | A study by Laura E. Koehn, et al., entitled "Developing a high taxonomic resolution food web model to assess the functional role of forage fish in the California Current ecosystem," which was cited in comments submitted to the Council, a body of which NMFS is a voting member, while NMFS was developing the Rule (the "Koehn Study"). |

ECF 35 at 2-3. Alternatively, Oceana argues that these materials are admissible under exceptions to the record review rule. *Id.* at 14-16.

Defendants oppose the motion on the grounds that these items are not properly part of the administrative record because NMFS did not consider them, either directly or indirectly, when developing the Rule. ECF 36 at 8-14. Defendants also argue that the limited exceptions for admission of extra-record evidence do not apply. *Id.* at 14-18. Finally, defendants argue that if the Court includes or admits the ATS Materials, additional items should be added to the administrative record to explain and give context to those materials. *Id.* at 18-20.

Judge Lucy H. Koh referred this motion to the undersigned discovery referral judge. ECF 33. The Court held a hearing on June 6, 2017. Having considering the briefs, argument at the hearing, and the relevant legal authority, the Court GRANTS IN PART and DENIES IN PART Oceana's motion to compel completion of the administrative record.

I.  **Background**

On November 20, 2015, defendant NMFS published a proposed rule entitled *Fisheries Off West Coast States; Coastal Pelagic Species Fisheries; Multi-Year Specifications for Monitored and Prohibited Harvest Species Stock Categories* in the Federal Register, requesting public comments. AR 88. The public comment period closed on December 31, 2015. *Id*. On September 30, 2016, NMFS approved the final Rule. AR 186. On October 26, 2016, the final Rule was

published in the Federal Register. 81 Fed. Reg. 74,309. The Rule set annual catch limits and other reference points for various species of fish, including an annual catch limit of 25,000 metric tons for the central subpopulation of northern anchovy ("anchovy"). *Id.* at 74,310. In this lawsuit, Oceana alleges that the challenged Rule is not based on the best available science, fails to articulate a rational basis for its decisions, fails to prevent overfishing, and fails to achieve optimum yield, contrary to the Magnuson Act and the APA.[2] ECF 1; ECF 30 at 2.

## II. Evaluation of Completeness of the Administrative Record

"Generally, judicial review of an agency action is limited to review of the record on which the administrative decision was based." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989). Courts, however, may grant a motion to complete the administrative record where the agency has not submitted the "whole" record." *See* 5 U.S.C. § 706 ("the court shall review the whole record or those parts of it cited by a party"). The "whole" record "consists of all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson*, 885 F.2d at 555 (citation omitted); *see also Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S.402, 420 (1971) (holding that courts must review "the full administrative record that was before the [agency] at the time [it] made [the] decision")). An agency may not exclude information it considered on the grounds that it did not rely on that information. *People ex rel. Lockyer v. U.S. Dep't of Ag.*, No. C05-03508 EDL, 2006 U.S. Dist. LEXIS 15761, at *9-10 (N.D. Cal. Mar. 16, 2006).

The agency's designation of the record is accorded a strong presumption of regularity and completeness, which the plaintiff must overcome with "clear evidence." *Gill v. Dep't of Justice*, No. 14-cv-03120-RS (KAW), 2015 U.S. Dist. LEXIS 170347, at *15 (N.D. Cal. Dec. 18, 2015). To meet this standard, the plaintiff must identify the allegedly omitted materials with sufficient specificity and "identify reasonable, non-speculative grounds for the belief that the documents were considered by the agency and not included in the record." *Id.* at *16-17 (internal quotation

---

[2] The Court may set aside an agency's action under the APA only if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Under the Magnuson Act, fishery and conservation management measures must be "based on the best scientific information available." 16 U.S.C. § 1851(a)(2).

3

marks and citations omitted). The plaintiff can also rebut the presumption of completeness by showing that the agency applied the wrong standard in compiling the record. *See, e.g., Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, No. CV01-640-RE, 2005 U.S. Dist. LEXIS 16655, at \*10 (D. Or. March 3, 2005) (holding presumption of completeness overcome where agency excluded documents because they did not "form the basis" for the agency's determination). The plaintiff need not show bad faith or improper motive to rebut the presumption. *Lockyer*, 2006 U.S. Dist. LEXIS 15761, at \*9.

### III. Discussion

#### A. Administrative Record Prepared by NMFS

Although the agency bears the initial responsibility to assemble the administrative record, the record "is not necessarily those documents that the *agency* has compiled and submitted as 'the' administrative record." *Thompson*, 885 F.2d at 555 (emphasis in original) (internal quotation marks and citation omitted). Similarly, although an agency's certification of the administrative record is entitled to a strong presumption of regularity, a certification that does not make clear that the record includes all documents and materials directly or indirectly considered by the agency in making its decision "suggests noncompliance with the standard according to which an administrative record should be compiled." *Gill*, 2015 U.S. Dist. LEXIS 170347, at \*19-20 (holding presumption of completeness rebutted where agency certified that the record contained all information "considered in the development" of the agency action but did not state that all materials directly or indirectly considered by the agency were included).

Here, NMFS assembled the administrative record and filed it with the Court along with a certification signed by Joshua Lindsay. ECF 26-2. Mr. Lindsay is a NMFS Fishery Policy Analyst who was the lead NMFS staff member who prepared both the proposed and final versions of the Rule, as well as all supporting documents. ECF 36-1 at ¶ 4. In the certification, Mr. Lindsay states that he is "the custodian of NMFS documents relating to the final rule challenged by Plaintiff in this case" and that "[r]ecords comprising the administrative record for the Rule are located in the NMFS West Coast Region office in Long Beach, California." ECF 26-2 at ¶¶ 3-4. Mr. Lindsay states that under his "direction and supervision, NMFS staff in the Long

4

Beach Office conducted a diligent search for an assembled the documents for the administrative record for the Rule." *Id.* at ¶ 5. Mr. Lindsay also certifies that the record filed with the Court constitutes "a true, correct, and complete copy of the administrative record for the Rule." *Id.* at ¶ 6.

The certification fails to explain what standard was used by Mr. Lindsay and his staff in identifying what materials should be included in the administrative record. The agency's inadequate certification overcomes the presumption of completeness, particularly where, as discussed below, Oceana has demonstrated that the record prepared by NMFS does not include certain materials that were directly or indirectly considered by the agency in formulating the Rule.

### B. Materials Oceana Seeks to Add to the Administrative Record

#### 1. The ATS Materials

##### a) NMFS's direct or indirect consideration of the ATS Materials

The first group of materials that Oceana seeks to add to the administrative record relate to acoustic trawl sampling ("ATS") performed by NMFS's Southwest Fisheries Science Center ("SWFSC") in the summer of 2015. Oceana contends that the ATS Materials, which contain evidence of anchovy abundance as of the summer of 2015, are critical to determining whether the Rule is rational and consistent with law. ECF 35 at 9.[3] Oceana argues that at the time NMFS promulgated the Rule, the anchovy population had been declining for a number of years, but NMFS nevertheless "set the annual catch limit at a level that approached or exceeded the size of the entire anchovy population" as reflected in the ATS data collected in 2015. *Id.* at 1.

At a May 2016 NMFS workshop, SWFSC staff reported on the 2015 ATS data and stated that "unlike previous years, the wider distribution of anchovy in the survey area in 2015 made it possible to generate an abundance estimate for northern anchovy," although the estimate was "not available" for the May 2016 workshop. AR 159 at 2782. Mr. Lindsay—"the lead NMFS staff member who prepared both the Rule and the [November 2015] proposed version of the rule … as

---

[3] According to the parties, NMFS also collected ATS data in the summer of 2016. For purposes of this motion, the "ATS Materials" consist of materials relating to the ATS performed in summer 2015, not materials concerning the 2016 ATS.

5

well as all documents in support of the proposed and final rules"—attended the May 2016 workshop at which the 2015 ATS information was discussed. ECF 36-1 at ¶¶ 4, 6. On October 11, 2016, SWFSC was directed to prepare an estimate of anchovy abundance using the 2015 ATS data from 2016 and to present that estimate at the November meeting of the Pacific Fishery Management Council ("Council"). ECF 36-2 at ¶ 5. SWFSC submitted a draft memo on the subject to the Council on November 11, 2016 and presented it to the Council on November 19, 2016. ECF 36-2 at ¶ 7.

Oceana acknowledges that a draft report on the ATS information was not presented until several weeks after the Rule was promulgated, but contends, credibly in the Court's view, that "a draft version almost certainly was available" at the time of the Rule and that "[t]he data and analyses upon which the report was based, along with the results of those analyses, were undoubtedly available long before the report itself was drafted, and would have been shared, discussed, and otherwise conveyed among the report's nine co-authors, all of whom are NMFS employees, as they prepared the report." ECF 35 at 10.[4] The declaration of Gerard DiNardo, Director of the Fisheries Resource Division within SWFSC, states that "SWFSC staff scientists did not *complete* a draft estimate of anchovy biomass using the acoustic trawl method for the SWFSC's internal review process until early November 2016, after publication of the challenged NMFS rule in this case," which occurred on October 26, 2016. ECF 36-2 at ¶ 6 (emphasis added); 81 Fed. Reg. 74,309. Notably, however, Mr. DiNardo states that SWSFC staff *began* drafting the estimate document "in mid-October 2016, at the conclusion of the October 11, 2016 meeting" of a subcommittee of the Council, at which SWFSC "was requested to estimate absolute biomass based on data from the summer 2015 acoustic trawl survey and to present that estimate at the

---

[4] "[I]n many cases internal comments, draft reports, inter- or intra-agency emails, revisions, memoranda, or meeting notes will inform an agency's final decision" and therefore these types of materials cannot be categorically excluded from the universe of materials 'directly or indirectly considered by agency decision-makers.'" *Inst. for Fisheries Res. v. Burwell*, No. 16-cv-01574-CV, 2017 U.S. Dist. LEXIS 5642, at *2-3 (N.D. Cal. Jan. 10, 2017); *see also Native Village of Point Hope v. Jewell*, 740 F.3d 489, 499-500 (citing "internal emails" and "draft scenarios" in invalidating agency decision).

November Council meeting." ECF 36-2 at ¶ 5. In addition, defendants argued at the hearing on this motion that it would have taken significant work to convert the ATS data discussed at the May 2016 workshop into a draft report. Thus, because NMFS completed the report by November 11, 2016, it follows that at least some work on this issue must have taken place before publication of the final rule on October 26, 2016. In fact, Mr. DiNardo states that there were "[d]eliberative communications among the authors were exchanged in the drafting of the document," which appear to have occurred prior to the time the draft was ready in early November 2016 for "the SWFSC's internal review process." ECF 36-2 at ¶¶ 6-7. Oceana also points to evidence in the record showing that NMFS was analyzing the summer 2015 ATS data as early as the May 2016 workshop. *See* ECF 37 at 3-4.

Defendants nevertheless argue that the ATS Materials should not be part of the administrative record because they were not "directly or indirectly considered by NMFS decision-makers for the Rule." ECF 36 at 9, 10. Defendants claim that the agency decision-makers did not review or obtain any of the drafts or pre-release materials that Oceana seeks to add to the administrative record, emphasizing that the SWFSC personnel who prepared the ATS Materials "work in a separate office in a different city and are organized as a separate subagency of NMFS." ECF 36 at 3.

The case law does not consistently articulate *who* must have considered materials (directly or indirectly) in order to make those materials part of the administrative record. Defendants cite several cases that suggest that the materials must have been considered by "agency decision-makers." *See* ECF 36 at 6-8. But other cases phrase the question as what materials were considered by "the agency" itself. *See, e.g., Portland Audubon Soc'y v. Or. Lands Coalition*, 984 F.2d 1534 (9th Cir. 1993) ("'The whole record' includes everything that was before the agency pertaining to the merits of its decision."). Defendants acknowledge that documents need not have "literally passed before the eyes of the decision-makers" in order to be part of the administrative record, and that a decision-maker can be deemed to have "constructively considered" materials that, for example, were relied upon by subordinates or materials upon which a report that was considered rely heavily. ECF 36 at 7 and cases cited therein. Under the circumstances of this

7

case, the Court is not persuaded that it is sensible to distinguish between materials considered by NMFS's "scientific staff" and materials before the individual NMFS employees responsible for developing the Rule, as defendants argue. Mr. DiNardo explained in his declaration that the group within NMFS that collected and created the ATS Materials (SWFSC) is the "research arm" of NMFS, and "SWFSC is often asked to provide scientific research and advice to the Council and NMFS West Coast region staff that help administer the [Fishery Management Plan]." ECF 36-2 at ¶ 1. Given SWFSC's role within the agency to provide scientific research and advice to decision-makers elsewhere within NMFS, the ATS Materials should be included in the administrative record.

There is also direct evidence that NMFS decision-makers directly or indirectly considered the ATS Materials. For example, the administrative record prepared by NMFS contains a report that establishes that the topics of the ATS data and development of an anchovy abundance estimate was discussed at the May 2016 workshop:

> During this workshop, the acoustic group at SWFSC stated that unlike previous years, **the wider distribution of anchovy in the survey area in 2015 made it possible to generate an abundance estimate for northern anchovy, but the estimate was not available for the workshop.** The Panel agreed that such an estimate will need careful review if used for stock assessment. Methodology Panels may be needed if new methods are developed to address the uncertainties identified during the 2011 and other reviews. The acoustic group also discussed their plans for a summer 2016 [Acoustic Trawl Method] survey with expanded coverage in areas where anchovy are found (although the expanded area does not include the nearshore inside 50 meters depth), but noted that results from this survey will not be available for either survey-based or model-based assessments in 2016.

AR 159 at 2782 (emphasis added).

Indeed, the final Rule, as published in the Federal Register on October 26, 2016, discussed the assessment of anchovy data that was then underway:

> Relating to the comment that the stock has not been assessed recently, and that NMFS should set the [Annual Catch Limit] based on updated information, NMFS points out that the Council, in coordination with NMFS Southwest Fisheries

> Science Center, recently held a workshop to examine available approaches to assessing short-lived, data poor species as well the current available data and how it may be used. A report from this workshop is now available and was reviewed by the Council at its September 2016 meeting. **Additionally, NMFS is currently analyzing some of the data described above about CSNA and, based on the recommendations from this workshop, is scheduled to provide an assessment of the available information on the stock in the fall of 2016.** Although the current management framework for anchovy is not set up to explicitly utilize the abundance information that may be produced, it will hopefully allow NMFS to have a better understanding of the current state of this stock."

81 Fed. Reg. at 74,311 (emphasis added).

Many of defendants' arguments go to reasons why NMFS could properly have disregarded the ATS Materials in setting the annual catch limits in the Rule. While such arguments may be relevant in defending the Rule, they are not relevant to the narrower issue of completing the administrative record. For example, defendants emphasize that the draft memo from November 2016 was stamped as a draft, "was never finished or issued in final form, and contains important qualifiers including that it should not be used as a measure of relative or absolute anchovy abundance until a further methodology review is completed by the SWFSC." ECF 36 at 2. At oral argument, defendants argued additional reasons why single-point estimates are not an appropriate basis for setting annual catch limits. These arguments go to the merits of the Court's review of the agency's decision, not the proper scope of the administrative record. *See Am. Farm Bureau Fed'n v. U.S. Env. Prot. Agency,* No. 1:11-CV-0067, 2011 U.S. Dist. LEXIS 148637, at *19 (M.D. Pa. Dec. 28, 2011) (stating that agency's argument that "the Report should not be included because it is, in its view, deeply flawed … misses the point. The question here is not the validity of the Report, but rather whether the Report was considered by the EPA."). As defendants acknowledge, "material considered, but then discounted or otherwise not relied upon, is part of the record." ECF 36 at 10 (emphasis in original). Here, the evidence shows that the ATS Materials were considered by NMFS, either directly or indirectly, during development of the Rule.

Accordingly, the administrative record in this case must include the ATS Materials that existed as of publication of the final Rule on October 26, 2016, including ATS data from summer 2015, analyses of that data (including communications discussing or conveying such analyses),

9

and drafts of the ATS paper that was presented to the Council on November 19, 2016.

### b) Defendants' request to add additional ATS items to administrative record

Defendants argue that if Oceana is permitted to supplement the administrative record with the ATS Materials, defendants should be permitted to add two items to the record: (1) the November 2016 draft memo entitled "The Distribution and Biomass of the Central-Stock Northern Anchovy during Summer 2015, Estimated from Acoustic-Trawl Sampling," and (2) an April 2017 final technical memo entitled "Distribution, Biomass, and Demography of the Central-Stock of Northern Anchovy During the Summer 2016, Estimated from Acoustic-Trawl Sampling." ECF 36 at 18-20. Defendants argue that these materials "would be necessary for the Court to fully evaluate whether NMFS decision-makers for the Rule should have considered" the ATS Material and "to explain technical terms or complex subject matter." *Id.* at 20. Oceana does not oppose defendants' request to add the draft memo, but it does oppose defendants' request to add the April 2017 study (ECF 37 at 14-15 and n.6).

Because these documents post-date issuance of the Rule, NMFS could not have considered them, and thus the Court denies defendants' request that they be added to the administrative record. *See High Sierra Hikers Ass'n v. U.S. Dep't of Interior*, No. C-09-4621 JCS, 2011 U.S. Dist. LEXIS 68053, at *20, 23, 35, 38 (N.D. Cal. June 24, 2011) (refusing to supplement record with documents that post-date the date of the agency decision at issue).

### 2. The SST Report

The second item that Oceana seeks to include in the administrative record is a report by NMFS entitled "Review and Re-evaluation of Minimum Stock Size Thresholds for Finfish in the Coastal Pelagic Species Fishery Management Plan for the U.S. West Coast," dated August 22, 2016. ECF 35-4. According to Oceana, the SST report was prepared by NMFS's SWFSC and

"includes the agency's updated estimates of parameters that the Fishery Management Plan uses to calculate the overfishing limit for anchovy." ECF 35 at 12. In particular, the report updates estimates of two parameters—fishing rate to produce maximum sustainable yield ($F_{MSY}$) and biomass of anchovy that would produce maximum sustainable yield ($SSB_{MSY}$) —that are multiplied together in calculating the overfishing limit ("OFL") for anchovy. ECF 35-4 at 17-18; AR 30:920 (formula for overfishing limit is "BIOMASS * FMSY * DISTRIBUTION"). The Rule, in turn, set an annual catch limit that was derived in part from a default OFL under the relevant Fishery Management Plan that is used "unless there is determined to be a more appropriate OFL." 81 Fed. Reg. at 74,309. According to Oceana, the report's updated parameters "produce a substantially lower [OFL] than the one specified" in the Rule. ECF 35 at 12.

The Stock Size Thresholds Report should be part of the administrative record, for several reasons.[5] First, Oceana offered evidence that NMFS's SST Report was presented in a public meeting of the Council in September 2016, during development of the challenged Rule. ECF 35 at 12 (citing Agenda Item E.1.a. from September 2016 Council meeting). The final Rule refers to the September 2016 Council meeting and some of the issues concerning "assessing short-lived, data poor species" that were discussed at that meeting, including "the currently available data and how it might be used." 81 Fed. Reg. at 74,311. The final Rule also refers to comments requesting

---

[5] Mr. Lindsay's declaration states that "the Rule established only an [annual catch limit] for the central subpopulation of northern anchovy, not [minimum stock size thresholds] or … OFLs. So that [SST Report] was not relevant to the Rule and should not have been, and was not, considered in the development of the Rule." ECF 36-1 at ¶ 12. The standard for determining the contents of the administrative record for an agency's *failure to act* (*e.g.*, NMFS's alleged failure to establish or revise the OFL) may differ somewhat from those governing preparation of the administrative record for review of an agency's actions. *San Francisco Baykeeper v. Whitman*, 297 F.3d 877, 886 (9th Cir. 2002) ("[W]hen a court considers a claim that an agency has *failed* to act in violation of a legal obligation, review is not limited to the record as it existed at any single point in time, because there is no final agency action to demarcate the limits of the record.") (emphasis in original) (internal quotation marks and citations omitted). But this is not a pure "failure to act" case because NMFS did promulgate a Rule and thus there is a point in time at which the record can be judged, and in any event neither party has argued that a different standard for completing the administrative record applies to the SST Report. Accordingly, the Court evaluates the SST Report under the "direct or indirect consideration" standard.

11

"reconsideration of the existing OFL." *Id.* at 74,310. This indicates that the agency considered, directly or indirectly, the OFS information presented at the September 2016 Council meeting, including the SST Report.

Second, according to defendants, the SST Report was "prepared in connection with a settlement agreement in another case" between Oceana and NMFS. ECF 36 at 4; *see also* ECF 36-1 at ¶ 12; AR 186 at 3057 ("Although the litigation in the Northern District of California by Oceana was not specifically addressing these [Annual Catch Limits], it was about management of this fishery and the [Acceptable Biological Catches] levels, and NMFS is now following through on our obligations under a settlement agreement…"). Courts have held that materials generated in connection with settlements with the agency are at least indirectly considered by the agency in deciding related issues. *See, e.g., Thompson*, 885 F.2d at 556 (holding that letters regarding negotiation of settlement between plaintiff and his employer should be added to administrative record because they were directly or indirectly considered when agency decided to dismiss plaintiff's complaints to Department of Labor with prejudice); *Cal. v. U.S. Dep't of Labor*, No. 2:13-cv-02069-KJM-DAD, 2014 U.S. Dist. LEXIS 57520, at *17-18 (E.D. Cal. Apr. 24, 2014) (holding that correspondence concerning settlement negotiations between union and state transportation representatives was "at the very least indirectly considered" by the Department of Labor in its decision refusing to certify grants of federal funds for local transit projects).

Accordingly, the SST Report, which was prepared by the same agency, NMFS, that developed the Rule challenged in this case and arose from a settlement between NMFS and Oceana, should be part of the administrative record.

### 3. The Koehn Study

The third item that Oceana seeks to add to the administrative record is a study published in *Ecological Modeling* entitled "Developing a high taxonomic resolution food web model to assess the functional role of forage fish in the California Current ecosystem," by Laura E. Koehn and

12

other authors. ECF 35-5. Oceana characterizes this study as "detailing the importance of anchovy to marine predators." ECF 35 at 3. Oceana's basis for seeking to include the Koehn Study in the record is that it was "discussed and cited in comments submitted to the Pacific Fishery Management Council, a body in which NMFS actively participates as a voting member, during the rulemaking process" for the Rule. *Id.* at 3, 13. Oceana cites no evidence suggesting that NMFS considered the Koehn Study, either directly or indirectly, in formulating the Rule. That the Koehn Study may have been sent to a body in which NMFS is a member is too attenuated a connection to the Rule to justify including the study in the record. Accordingly, Oceana's request that the administrative record include the Koehn Study is denied.

Oceana alternatively argues that the Koehn Study is admissible under exceptions permitting admission of extra-record materials.[6] The Ninth Circuit recognizes exceptions allowing consideration of extra-record evidence where admission of that evidence "(1) is necessary to determine whether the agency has considered all relevant factors and has explained its decision, (2) is necessary to determine whether the agency has relied on documents not in the record, (3) when supplementing the record is necessary to explain technical terms or complex subject matter, or (4) when plaintiffs make a showing of agency bad faith." *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 992 (9th Cir. 2014) (internal quotation marks and citations omitted). These exceptions "are narrowly construed and applied" to ensure "that the exception does not undermine the general rule." *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2004) (citations omitted). In addition, "[f]or extra-record material to be considered, a showing must first be made that the record is inadequate." *Bair v. Cal. State DOT*, 867 F. Supp. 2d 1058, 1067 (N.D. Cal. 2012).

In seeking to admit the Koehn Study, Oceana relies on the "relevant factors" exception to the record review rule. ECF 35 at 15. Some district courts in the Ninth Circuit have held that this

---

[6] Oceana argues that each of the three categories of materials that are the subject of its motion—the ATS Materials, the SST Report, and the Koehn Study—are admissible under the extra-record materials exceptions. *See* ECF 35 at 14. Having concluded that the first two categories of materials must be added to the administrative record, the Court need not reach the issue of whether those materials are also admissible under the exceptions for extra-record materials.

13

exception applies only when the agency "fail[ed] to consider a general subject matter that is demonstrably relevant to the outcome of the agency's decision, not when specific hypotheses and/or conclusions are omitted from consideration." *In re Delta Smelt Consol.* Cases, No. 1:09-CV-1053 OWW DLB, 2010 U.S. Dist. LEXIS 61083, at *21 (E.D. Cal. June 21, 2010). Regardless of whether this precise formulation of the "relevant factors" exception is correct, the proper narrow application of that exception does not warrant the admission of materials that are cumulative to those already in the record. As the Ninth Circuit has explained the rationale for the "relevant factors" exception, "it will often be impossible, especially when highly technical matters are involved, for the court to determine whether the agency took into consideration all relevant factors unless it looks outside the record to determine what matters the agency should have considered but did not." *Asarco, Inc. v. U. S. Env. Prot. Ag.*, 616 F.2d 1153, 1160 (9th Cir. 1980). But such evidence should be considered only "for the limited purpose[] of ascertaining whether the agency considered all the relevant factors" and "[c]onsideration of the evidence to determine the correctness or wisdom of the agency's decision is not permitted." *Id*. Admitting an additional study on the same subject matter as evidence already in the record would not shed light on whether the agency considered all the relevant factors. Moreover, where other, similar materials are already in the administrative record, the plaintiff cannot show that the record is inadequate, as required before the Court may consider extra-record evidence. *See Bair*, 867 F. Supp. 2d at 1067.

Defendants argue that as a result of the parties' meet and confer process, they have already agreed to include in the record multiple other papers that address the same subject matter as the Koehn study. *See* ECF 36 at 13-14, 17-18, and n.4. Oceana has not demonstrated otherwise. Accordingly, the Koehn Study is not admissible to under the "relevant factors" exception.

Oceana also suggests that under *Delta Smelt*, documents that are not admissible under the relevant factors exception may nevertheless be admitted to evaluate whether the agency used the best available science, as required under the Magnuson Act. ECF 37 at 11-12; 16 U.S.C. § 1851(a)(2). The Koehn Study is not admissible on this theory either because Oceana has not demonstrated, through expert declarations or otherwise, that the study represents the best available science on the issues to which it pertains. *See, e.g., San Luis & Delta-Mendota Water Auth. v.*

14

*Salazar*, No. 1:09-CV-407 OWW DLB, 2009 U.S. Dist. LEXIS 116985, at *30 (E.D. Cal. Dec. 16, 2009) (stating that "best available science" argument "must be supported by expert declarations or testimony").

IV. **Conclusion**

For the reasons discussed above, the Court orders that no later than **July 14, 2017**, defendants must complete the administrative record with the following documents:

1. All data obtained through NMFS's ATS activities in the summer of 2015 and the following materials that existed as of October 26, 2016: analyses of that data, including emails and other correspondence discussing or conveying such analyses, and drafts of the paper entitled "The Distribution and Biomass of the Central-Stock Northern Anchovy during Summer 2015, Estimated from Acoustic-Trawl Sampling"; and

2. The NMFS report entitled "Review and Re-evaluation of Minimum Stock Size Thresholds for Finfish in the Coastal Pelagic Species Fishery Management Plan for the U.S. West Coast," dated August 22, 2016.

Defendants have not argued that any of these materials are privileged. If, however, defendants withhold any documents from the record on the basis of privilege, they must also provide a privilege log no later than the dates set forth above.

**SO ORDERED.**

Dated: June 21, 2017

SUSAN VAN KEULEN
United States Magistrate Judge