United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| OCEANA, INC., <br><br> Plaintiff, <br><br> v. <br><br> PENNY PRITZKER, et al., <br><br> Defendants. | Case No. 16-CV-06784-LHK <br><br> **ORDER DENYING DEFENDANTS' MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE** <br><br> Re: Dkt. No. 40 |

Plaintiff Oceana, Inc. ("Plaintiff") challenges a final rule setting annual catch limits for the central subpopulation of the northern anchovy, which was promulgated by the National Marine Fisheries Service ("NMFS"). Defendants in the instant suit are Penny Pritzker[1] in her official capacity as Secretary of Commerce, National Oceanic and Atmospheric Administration, and NMFS (collectively, "Defendants"). On February 17, 2017, Defendants filed an Administrative Record ("AR") for NMFS's final rule. On April 21, 2017, Plaintiff filed a Motion to Compel Completion of the Administrative Record ("Motion to Complete"). ECF No. 36 ("Mot. to Complete"). On June 21, 2017, Magistrate Judge Susan van Keulen (the "Magistrate Judge")

---

[1] Penny Pritzker is no longer the Secretary of Commerce.

1

Case No. 16-CV-06784-LHK
ORDER DENYING DEFENDANTS' MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE

1  granted in part and denied in part Plaintiff's Motion to Compel Completion of the Administrative

2  Record. ECF No. 39, *Oceana, Inc. v. Pritzker*, 2017 WL 2670733 (N.D. Cal. June 21, 2017)

3  ("Original Order").

4  On July 3, 2017, Defendants filed a Motion for Relief from Nondispositive Pretrial Order

5  of Magistrate Judge. ECF No. 39 ("Mot."). Having considered the parties' briefing the relevant

6  law and the record in this case, the Court DENIES Defendants' Motion for Relief from

7  Nondispositive Pretrial Order of Magistrate Judge

## I.  BACKGROUND

On November 20, 2015, NMFS published a proposed rule entitled *Fisheries Off West Coast States; Coastal Pelagic Species Fisheries; Multi-Year Specifications for Monitored and Prohibited Harvest Species Stock Categories* in the Federal Register (the "Catch Rule"), and requested public comments. AR 88. The public comment period closed on December 31, 2015. *Id.* On September 30, 2016, NMFS approved the Catch Rule. AR 186. On October 26, 2016, the Catch Rule was published in the Federal Register. 81 Fed. Reg. 74309. The Catch Rule set annual catch limits and other reference points for various species of fish, including an annual catch limit of 25,000 metric tons for the central subpopulation of northern anchovy. *Id.* at 74310.

Plaintiff brings this challenge to the Catch Rule under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, and the Magnuson-Stevens Fishery Conservation and Management Act ("Magnuson Act"), 16 U.S.C. § 1801 *et seq.* The Court may set aside an agency's action under the APA if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). ECF 1, Complaint ("Compl."). When a challenge is brought under the APA, the relevant agency is charged with preparing and filing a complete administrative record. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 419 n. 30 (1971) (limiting appeals of agency decisions to the administrative record before the agency). In the original April 21, 2017 Motion to Complete, Plaintiff sought to add three sets of documents and data that Plaintiff contends should have been part of the administrative record, but were

2

Case No. 16-CV-06784-LHK
ORDER DENYING DEFENDANTS' MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE

excluded. *See* Mot. to Complete at 2. On May 12, 2017, Defendants filed an opposition to Plaintiff's Motion to Complete. ECF No. 36. On May 26, 2017, Plaintiff filed a reply. ECF No. 37.

First, Plaintiff's Motion to Complete sought the inclusion of data collected through acoustic trawl sampling during the summer of 2015, analyses of that data, correspondence discussing or conveying such analyses, and drafts of the paper entitled "The Distribution and Biomass of the Central-Stock Northern Anchovy during Summer 2015, Estimate from Acoustic-Trawl Sampling," which NMFS presented to the Pacific Fishery Management Council (the "Council") in November 2016 (collectively, the "2015 Trawl Survey").

Second, Plaintiff's Motion to Complete sought the inclusion of a NMFS report entitled "Review and Re-evaluation of Minimum Stock Size Thresholds for Finfish in the Coastal Pelagic Species Fishery Management Plan for the U.S. West Coast" (August 22, 2016), prepared by the agency's Southwest Fisheries Science Center (the "Finfish Report").

Finally, Plaintiff's Motion to Complete sought the inclusion of a study by Laura E. Koehn, among others, entitled "Developing a high taxonomic resolution food web model to assess the functional role of forage fish in the California Current ecosystem," which was cited in comments submitted to the Council, a body of which NMFS is a voting member, while NMFS was developing the Rule (the "Koehn Study").

On June 21, 2017, the Magistrate Judge granted Plaintiff's Motion to Complete as to the 2015 Trawl Survey and the Finfish Report, but denied Plaintiff's Motion to Complete as to the Koehn Study. *See* Original Order at *8.

On June 3, 2017, Defendants filed the instant Motion for Relief from Nondispositive Pretrial Order of Magistrate Judge. *See* Mot. Defendants challenge the inclusion of the 2015 Trawl Survey and the Finfish Report in the administrative record. *See* Mot. On July 18, 2017, Plaintiff filed an opposition, ECF No. 45 ("Opp'n"), and on July 20, 2017, Defendants filed a reply, ECF No. 46 ("Reply").

3

Case No. 16-CV-06784-LHK
ORDER DENYING DEFENDANTS' MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE

## II. LEGAL STANDARD

### A. Review of a Non-Dispositive Pretrial Decision by a Magistrate Judge

The district court may designate any non-dispositive pretrial matter to be determined by a magistrate judge, whose ruling on the matter will be modified or set aside only if "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). A magistrate judge's factual determinations are reviewed for clear error, which allows the district court to overturn them only if the court reaches a "definite and firm conviction that a mistake has been committed." *Perry v. Schwarzenegger*, 268 F.R.D. 344, 348 (N.D. Cal. 2010). In addition, a magistrate judge's legal conclusions are reviewed de novo to determine whether they are contrary to law. *Id.*

### B. Completeness of the Administrative Record

Review under the APA generally is restricted to the administrative record. *See, e.g., Ariz. Cattle Growers' Ass'n v. U.S. Fish & Wildlife Serv.*, 273 F.3d 1229, 1236 (9th Cir. 2001) ("The reviewing court may not substitute reasons for agency action that are not in the record."); 5 U.S.C. § 706 ("[T]he court shall review the whole record or those parts of it cited by a party . . . .").

In APA cases the administrative record is "the whole record," which "consists of all documents and materials directly or indirectly considered by agency decision-makers and includes evidence contrary to the agency's position." *Thompson v. U.S. Dep't of Labor*, 885 F.2d 551, 555 (9th Cir. 1989). Thus, the administrative record includes materials beyond those on which the administrative agency relied. *See Coalition v. Whitman*, 227 F. Supp. 2d 134, 139 (D.D.C. 2002) (stating that an agency may not exclude information on the grounds that it did not rely on the excluded information in reaching a final decision where there was evidence that the administrative agency reviewed that information).

"'An agency's designation and certification of the administrative record is treated like other established administrative procedures, and thus entitled to a presumption of administrative regularity.'" *Gill v. Dep't of Justice*, 2015 WL 9258075, at *5 (N.D. Cal. Dec. 18, 2015) (quoting *McCrary v. Gutierrez*, 495 F. Supp. 2d 1038, 1041 (N.D. Cal. 2007) (citations omitted)). To rebut

4

this "presumption of completeness" of the administrative record, the plaintiff must show "clear evidence" that the record is not complete by "'identify[ing] reasonable, non-speculative grounds for the belief that . . . documents were considered by the agency and not included in the record.'" *Id.* (citations omitted). Alternatively, the presumption of completeness may be rebutted where the agency applied the wrong standard for compiling the record. *See id.* at *6 ("'The application of an incorrect standard constitutes 'reasonable, non-speculative grounds for the belief that the documents were considered by the agency and not included in the record.'" (citation omitted)).

## III. DISCUSSION

As noted above, in the instant motion, Defendants challenge the Magistrate Judge's determination that the 2015 Trawl Survey and the Finfish Report should be included in the administrative record. The Court first addresses the Finfish Report and then addresses the 2015 Trawl Survey.

### A. The Finfish Report

Although Defendants do not contest that the Magistrate Judge's finding that the Finfish Report meets the "directly or indirectly considered by agency decision-makers" standard for inclusion in the administrative record, *Thompson*, 885 F.2d at 555, Defendants nonetheless argue that the presumption of completeness of the administrative record was not rebutted and that the Finfish Report should not be included in the administrative record. The Magistrate Judge held that the presumption of completeness was rebutted because (1) Defendants did not cite the standard that was used to assemble the administrative record, and (2) Defendants failed to include the Finfish Report and the 2015 Trawl Survey in the administrative record, both of which "were directly or indirectly considered by the agency in formulating the [Catch] Rule." Original Order at *3.

With respect to the Finfish Report, the Court finds that the presumption of completeness has been rebutted under the Magistrate Judge's second theory, and thus the Court need not reach the Magistrate Judge's first theory. Despite Defendants' argument that the Finfish Report should

5

not be included in the administrative record because the presumption of completeness has not been rebutted, Defendants do not dispute the Magistrate Judge's finding that the Finfish Report should have been included in the administrative record under the "directly or indirectly considered by agency decision-makers" standard for inclusion in the administrative record. *Thompson*, 885 F.2d at 555. Defendants' failure to contest this finding is effectively a concession that the Finfish Report was considered by "agency decision-makers" and thus should have been included in the administrative record. Thus, the Magistrate Judge's finding that the Finfish Report was "directly or indirectly considered by the decision-maker" constitutes "reasonable, non-speculative grounds for the belief that . . . documents were considered by the agency and not included in the record," and thus the presumption of completeness is rebutted. *Gill*, 2015 WL 9258075 at *5 (internal quotation marks omitted).

Accordingly, the Court DENIES Defendants' Motion as to the Finfish Report.

### B. 2015 Trawl Survey

As to the 2015 Trawl Survey, Defendants argue that the 2015 Trawl Survey does not meet the "directly or indirectly considered by agency decision-makers" standard for inclusion in the administrative record, *Thompson*, 885 F.2d at 555, and that the presumption of completeness of the administrative record was not rebutted. If the 2015 Trawl Survey satisfies the *Thompson* standard for inclusion in the administrative record, that is, if the 2015 Trawl Survey was "directly or indirectly considered" by a NMFS decisionmaker, Defendants' arguments fail. *See Gill*, 2015 WL 9258075 at *5 (finding presumption of completeness rebutted where Plaintiff has "identif[ied] reasonable, non-speculative grounds for the belief that . . . documents were considered by the agency and not included in the record").

The Magistrate Judge held that *Thompson* has been satisfied for two independent reasons. First, the Magistrate Judge held that NMFS scientists analyzed the 2015 Trawl Survey data, and that it was not "sensible to distinguish between materials considered by NMFS's 'scientific staff' and materials before the individual NMFS employees responsible for developing the [Catch]

6

Case No. 16-CV-06784-LHK
ORDER DENYING DEFENDANTS' MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE

Rule." Original Order at *4. Second, the Magistrate Judge found that the record contained "direct evidence that NMFS decision-makers directly or indirectly considered the [2015 Trawl Survey] Materials." *Id.*

The Court finds that the Magistrate Judge's finding that NMFS decisionmakers directly or indirectly considered the 2015 Trawl Survey data and analysis did not constitute "clear error." *See Perry*, 268 F.R.D. at 348 (holding that a Magistrate Judge's factual finding on nondispositive pretrial matters shall be only overturned for "clear error," that is, where the reviewing court has "definite and firm conviction that a mistake has been committed"). The Court reaches this conclusion for the following reasons:

First, the Catch Rule's entry in the Federal Register explicitly states that "NMFS considered the 2015 Trawl Survey data. NMFS is currently analyzing some of the data described above about [the central subpopulation of northern anchovy] and, based on the recommendations from this workshop, is scheduled to provide an assessment of the available information on the stock in the fall of 2016." 81 Fed. Reg. at 74311. Thus, the Federal Register itself stated that NMFS considered the 2015 Trawl Survey data and expected a report on the data in fall of 2016.

Second, the administrative record states that NMFS decisionmakers considered the 2015 Trawl Survey data. Scientific staff from the NMFS Southwest Science Center ("NMFS Science Center") presented information on this data at a May 2016 NMFS workshop. At the workshop, the NMFS Science Center staff announced that "unlike previous years, the wider distribution of anchovy in the survey area in 2015 made it possible to generate an abundance estimate for northern anchovy, but the estimate was not available for the workshop." AR 159 at 2782.

Third, Joshua Lindsay—"the lead NMFS staff member who prepared" the Catch Rule— attended the May 2016 workshop. ECF No. 36-1 ¶ 4. In a declaration, Lindsay states that he determined that "[i]t was clear that this [2015 Trawl Survey] abundance estimate would, at a minimum, be limited to a measure of anchovy in the geographical area of the survey." *Id.* ¶ 7. Moreover, Lindsay states that "although the acoustic trawl data had potential for providing

7
Case No. 16-CV-06784-LHK
ORDER DENYING DEFENDANTS' MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE

information on the abundance of the central subpopulation of northern anchovy, the data and calculation methods used required further review before any abundance estimate could be relied upon." *Id.* Lindsay thus considered and rejected the 2015 Trawl Survey data for use in the Catch Rule. *See Forest Guardians v. Kempthorne*, 2008 WL 11337359, at *3 (S.D. Cal. Apr. 1, 2008) (holding that the administrative record "includes information that is both favorable and unfavorable. Agencies can not cherry pick information that supports a decision and fail to reveal information that contradicts it. . . .'" (citations omitted)).

Fourth, Lindsay was aware in September 2016 of the work performed by NMFS Science Center staff on anchovy abundance. AR 184. In a September 16, 2016 email from Lindsay to another NMFS staff member, Lindsay discusses the methods that would provide "the best idea of trends in anchovy abundance" and indicates a familiarity with "the work the [NMFS Science Center] is doing on anchovy." AR 186. This evidence in the administrative record shows that Lindsay remained updated on the NMFS Science Center's analysis of anchovy data in September 2016.

Finally, Defendants previously represented to the Magistrate Judge and to this Court that an analysis of anchovy abundance based on the 2015 Trawl Survey data had not begun until mid-October 2016. In a correction submitted in support of the instant motion, Defendants concede that this representation was not correct. ECF No. 42-1 ¶ 4. Specifically, in their correction, Defendants concede that a draft estimate of anchovy abundance based on the 2015 Trawl Survey data was written in June 2016, and the NMFS Science Center performed "work and internal review of the document" in August 2016. *Id.* The Catch Rule was finally approved by NMFS on September 30, 2016, and published in the Federal Register on October 26, 2016. The fact that an analysis of the 2015 Trawl Survey data existed long before the September 30, 2016 final approval of the NMFS rule makes it likely that NMFS decisionmakers such as Lindsay, who remained updated on the NMFS Science Center's analysis of anchovy data in September 2016, considered the draft report. Moreover, this incorrect representation to the Court may constitute an

8

Case No. 16-CV-06784-LHK
ORDER DENYING DEFENDANTS' MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE

impropriety in the process of formulating the administrative record, which may create an appearance of irregularity, which would support the rebuttal of the presumption of completeness. *See Portland Audubon Soc. v. Endangered Species Comm.*, 984 F.2d 1534, 1548 (9th Cir. 1993) (holding that "impropriety in the process" of formulating the administrative record "creates an appearance of irregularity which the agency must then show to be harmless.").

In sum, the fact that the Federal Register itself states that NMFS was analyzing the 2015 Trawl Survey data; the fact that the 2015 Trawl Survey data was considered and rejected for use in the development of the Catch Rule; the fact that a report was expected in the fall of 2016; and the fact that Lindsay, the lead staff member addressing the Catch Rule, remained updated on the NMFS Science Center's anchovy population analyses is sufficient evidence that NMFS decisionmakers directly or indirectly considered the 2015 Trawl Survey data and June 2016 analysis. At the very least, the Court finds that the Magistrate Judge did not clearly err by finding that NMFS decisionmakers directly or indirectly considered these materials and that the presumption of completeness was rebutted. As noted above, a magistrate judge's factual determinations are reviewed for clear error, which allows the district court to overturn them only if the court reaches a "definite and firm conviction that a mistake has been committed." *Perry*, 268 F.R.D. at 348. Based on the evidence in the record, the Court has no such firm conviction.

Accordingly, the Court DENIES Defendants' motion as to the 2015 Trawl Survey.

## IV. CONCLUSION

For the foregoing reasons, the Court DENIES Defendants' Motion for Relief from Nondispositive Pretrial Order of Magistrate Judge.

**IT IS SO ORDERED.**

Dated: August 15, 2017

*Lucy H. Koh*
LUCY H. KOH
United States District Judge

9
Case No. 16-CV-06784-LHK
ORDER DENYING DEFENDANTS' MOTION FOR RELIEF FROM NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE