UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| OCEANA, INC., <br>    Plaintiff, <br>  v. <br> WILBUR ROSS, et al., <br>    Defendants. | Case No. 16-CV-06784-LHK <br> **ORDER GRANTING MOTION TO ENFORCE THE JUDGMENT** <br> Re: Dkt. No. 72 |

Plaintiff Oceana, Inc. ("Plaintiff") brought this suit against Defendant Wilbur Ross, in his official capacity; Defendant National Oceanic and Atmospheric Administration ("NOAA"); and Defendant National Marine Fisheries Service ("the Service") (collectively, "Defendants"). On January 18, 2018, the Court granted Plaintiff's motion for summary judgment and entered judgment. ECF Nos. 61, 62. On June 13, 2018, the Court granted in part and denied in part Defendants' motion to alter or amend judgment. ECF No. 68. Before the Court is Plaintiff's motion to enforce the judgment. ECF No. 72 ("Mot."). Having considered the parties' submissions, the relevant law, and the record in this case, the Court GRANTS Plaintiff's motion to enforce the judgment.

## I. BACKGROUND

### A. Procedural History

On November 11, 2016, Plaintiff filed its complaint. ECF No. 1. Plaintiff challenged the Service's 2016 Catch Rule for the central subpopulation of northern anchovy and alleged that the Service's 2016 Catch Rule violated the Magnuson-Stevens Fisher Conservation and Management Act ("Magnuson-Stevens Act") and the Administrative Procedure Act ("the APA").[1] *See id.* Plaintiff sought declaratory relief as well as to vacate the Catch Rule and remand to the Service to complete a new rule within no more than three months from the date of the entry of judgment. *Id.* Plaintiff also requested, among other things, that the Court maintain jurisdiction over the action until the Defendants were in compliance with the Magnuson-Stevens Act, the APA, and every order of the Court. *Id.* On February 17, 2017, Defendants filed their answer. ECF No. 25.

On September 1, 2017, Plaintiff filed a motion for summary judgment. ECF No. 51. In its motion, Plaintiff reiterated its request that the Court "hold that the Catch Rule violates the Magnuson[-Stevens] Act and the APA." *Id.* at 25. Plaintiff further requested "that the Court vacate the Catch Rule and remand it to [the Service to] complete a new rule that complies with the law within no more than 90 days from the date of this Order." *Id.* On October 13, 2017, Defendants filed a combined cross-motion for summary judgment and opposition to Plaintiff's motion for summary judgment. ECF No. 52. In their cross-motion, Defendants argued in the alternative that if the Court were to find that the Service unlawfully approved the 2016 Catch Rule, the Court should limit the remedy to a remand without vacatur. *See id.* at 24–25. Defendants recognized that Plaintiff requested vacatur of the Rule and a new rule within 90 days. *Id.* at 25. Defendants' only objection to the 90-day deadline was the following one sentence: "Such a remedy would not allow sufficient time for public comment and for [the Service] to recommend any changes to the [Pacific Fishery Management] Council [("Council")], consistent with the Council's role under the" Magnuson-Stevens Act. *Id.* at 25. Defendants did not contest the remedy of a remand.

---

[1] For a more detailed factual summary, see the Court's January 18, 2018 order on the motion and cross-motion for summary judgment. *See* ECF No. 61.

2
Case No. 16-CV-06784-LHK
ORDER GRANTING MOTION TO ENFORCE THE JUDGMENT

On November 11, 2017, Plaintiff filed its combined opposition to Defendants' motion for summary judgment and reply in support of Plaintiff's motion for summary judgment. ECF No. 56. In its reply, Plaintiff again requested that the Court "set aside the Catch Rule's provisions governing the central subpopulation of northern anchovy and order [the Service] to promulgate a new rule that applies the best available science and complies with the Magnuson[-Stevens] Act's mandate to prevent overfishing and achieve optimum yield by accounting for ecosystem needs within 90 days." *Id.* at 25. On December 8, 2017, Defendants filed their reply brief in support of Defendants' cross-motion for summary judgment. ECF No. 57. As to the remedy, Defendants challenged only whether vacatur would be appropriate. *See id.* at 14–15.

On January 18, 2018, the Court granted Plaintiff's motion for summary judgment and denied Defendants' cross-motion for summary judgment. ECF No. 61 ("MSJ Order"). The Court held that the Service's 2016 Catch Rule for the central subpopulation of northern anchovy, including the annual catch limit ("ACL") it established, violated the Magnuson-Stevens Act and the APA. The Court also found that the outdated values for the overfishing limit ("OFL") and acceptable biological catch ("ABC") on which the ACL was based were arbitrary and capricious. In particular, the Court found that "the OFL, ABC, and ACL are arbitrary and capricious because Plaintiff has presented substantial evidence that the OFL, ABC, and ACL are not based on the best scientific information available." *Id.* at 29. The Court also found that "it was arbitrary and capricious for the Service to fail to consider whether the OFL, ABC, and ACL still prevented overfishing in light of their direct reliance on a [maximum sustainable yield] estimate from a 1991 study that evidence in the administrative record indicated was out of date." *Id.* at 32.

After finding for Plaintiff, the Court considered next the appropriate remedy. *See id.* at 32–33. The Court acknowledged that Defendant had argued that even if the Court finds the Catch Rule arbitrary and capricious, the Court should not vacate. *See id.* at 32. In particular, Defendant had argued that "the Court should not vacate the ACL because a new acoustic trawl survey from 2016 ("2016 Survey") indicates the anchovy population is recovering." *Id.* The Court considered but explicitly "reject[ed] Defendants' claim that vacatur is inappropriate" for two reasons. First,

3
Case No. 16-CV-06784-LHK
ORDER GRANTING MOTION TO ENFORCE THE JUDGMENT

the Court found that the "2016 Survey results are not persuasive enough to overcome the presumption that a court shall 'set aside an agency rule that a court finds, arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.'" *Id.* (quoting *Nat. Res. Def. Council, Inc. v. U.S. Dep't of Interior*, 275 F. Supp. 2d 1136, 1143 (C.D. Cal. 2002)). Second, the Court found inapplicable the single case Defendants cited in support of their argument that the Court can consider evidence outside the administrative record in determining a remedy. *Id.* at 32–33. The Court therefore "reject[ed] Defendants' claim that vacatur is inappropriate." *Id.* On January 18, 2018, the Court entered judgment in favor of Plaintiff. ECF No. 62.

On February 15, 2018, Defendants filed a motion to alter judgment pursuant to Federal Rule of Civil Procedure 59(e). ECF No. 64. In the motion, Defendants asked for clarification on what the Court vacated. *See id.* In particular, Defendants asked the Court to clarify that the reference points established in the rule for stocks not at issue in this litigation—"the northern subpopulation of northern anchovy, jack mackerel, and krill"—had not been vacated. *Id.* at 2–3. Defendants also asked the Court to clarify that it did not vacate the OFL and ABC for the central subpopulation of northern anchovy because, according to Defendants, the Court's MSJ Order only referred to vacatur of the Catch Rule, or ACL. *Id.* at 3–5. Defendants explained that they sought "this clarification because it affects an ongoing [Service] rulemaking." *Id.* at 4. Particularly, Defendants complained that "[v]acatur of OFL and ABC would . . . require a more extended Council and [Service] process to formulate and promulgate through a notice-and-comment process of new OFL and ABC, even if [the Service] determines that doing so is not necessary." *Id.* at 4.

Plaintiff opposed on March 1, 2018. ECF No. 64. Defendants replied on March 8, 2018. ECF No. 66. In reply, Defendants argued that "the Court did not clearly exercise its equitable power to vacate OFL and ABC, and indicated only that the Rule or ACL for the stock had been vacated." *Id.* at 2.

On June 13, 2018, the Court granted in part and denied in part Defendants' motion to alter judgment. ECF No. 68 ("Motion to Alter Order"). The Court first clarified that "its judgment did not vacate the reference points the Catch Rule set for stocks other than the central population of

4

Case No. 16-CV-06784-LHK
ORDER GRANTING MOTION TO ENFORCE THE JUDGMENT

the northern anchovy," such as the jack mackerel. *Id.* at 2. Second, the Court clarified that it vacated not only the ACL set in the Catch Rule, but also the OFL and ABC for the central population of the northern anchovy. *Id.*

On August 10, 2018, Defendants filed a notice of appeal to the United States Court of Appeals for the Ninth Circuit. ECF No. 69. Defendants appealed the Court's January 18, 2018 MSJ Order, the January 18, 2018 judgment, and the June 13, 2018 Motion to Alter Order. *See id.* (citing ECF Nos. 61, 62, & 68).

### B. Plaintiff's Instant Motion to Enforce Judgment

On September 21, 2018, Plaintiff filed the instant motion to enforce judgment. *See* Mot. Plaintiff explains that it filed its motion to enforce because "the agency has still not issued a new catch rule correcting the legal violations this Court found in January [2018]." *Id.* at 1. Plaintiff "requests that the Court direct the [Service] to issue a proposed rule that corrects the flawed OFL, ABC, and ACL for the central subpopulation of northern anchovy" within 90-days after the Court's decision on the instant motion. *Id.* at 1–2. In support, Plaintiff explains that it reads this Court's MSJ Order as having granted Plaintiff's requested deadline of 90 days for the Service to promulgate the new rule and that the Service has failed to follow that timeline. *Id.* at 3. Plaintiff continues, "[r]egardless of whether the [MSJ] Order set a precise deadline, however, it is now clear that the agency has no plan for compliance and that fishing is continuing without any regulation in place." *Id.*

Defendants opposed on October 26, 2018. ECF No. 76 ("Opp'n"). In their opposition, Defendants acknowledge that they agree "that as long as ACL, ABC, and OFL remain vacated, the Council must work toward and ultimately propose new values and then [the Service] must approve or disapprove them consistent with the Magnuson[-Stevens] Act." *Id.* at 14. Nonetheless, the Defendants argue that the Court's MSJ Order did not include a 90-day deadline for the new OFL, ABC, and ACL. *Id.* at 1. Moreover, given the pending appeal, Defendants argue that the Court no longer has jurisdiction to establish a deadline, and in any event, "the Court should not impose a specific timeline and procedure for [the Service] to follow." *Id.* at 14.

Plaintiff replied on November 9, 2018. ECF No. 77 ("Reply").

## II. DISCUSSION

### A. A District Court's Jurisdiction During an Appeal

The general rule is that once a notice of appeal is filed it confers jurisdiction on the court of appeals and divests the district court of jurisdiction with respect to matters involved with the appeal. *See, e.g.*, *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 59 (1982); *McClatchy Newspapers v. Central Valley Typographical Union No. 46*, 686 F.2d 731, 734 (9th Cir. 1982). As the Ninth Circuit has explained, this is a "judge-made" rule, and "its purpose is to promote judicial economy and avoid the confusion that would ensue from having the same issues before two courts simultaneously." *Nat. Resources Def. Council, Inc. v. S.W. Marine, Inc.*, 242 F.3d 1163, 1166 (9th Cir. 2001).

A district court may, however, "retain[ ] jurisdiction during the pendency of an appeal to act to preserve the status quo." *Id.*; *see also Hoffman v. Beer Drivers & Salesmen's Local Union No. 888*, 536 F.2d 1268, 1276 (9th Cir.1976). This exception is codified in former Federal Rule of Civil Procedure 62(c), now Rule 62(d).[2] Rule 62(d) allows a district court to "suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights," while an appeal is pending. This Rule grants a district court "no broader power than it has always inherently possessed to preserve the status quo during the pendency of an appeal." *S.W. Marine*, 242 F.3d at 1166. This Rule "does not restore jurisdiction to the district court to adjudicate anew the merits of the case." *McClatchy Newspapers*, 686 F.2d at 734. Therefore, any action taken pursuant to Rule 62(d) "may not materially alter the status of the case on appeal," *S.W. Marine*, 242 F.3d at 1166 (quoting Allan Ides, *the Authority of a Federal District Court to Proceed After a Notice of Appeal Has Been Filed*, 143 F.R.D. 307, 322 (1992)), nor may the district court take actions that alter any substantial rights of the parties on appeal not decided in its original disposition of the case. *See McClatchy Newspapers,* 686 F.2d at 735; *see also In re TFT–*

---

[2] The most recent amendments to the Federal Rules of Civil Procedure went into effect on December 1, 2018. *See* https://www.uscourts.gov/rules-policies/current-rules-practice-procedure.

6
Case No. 16-CV-06784-LHK
ORDER GRANTING MOTION TO ENFORCE THE JUDGMENT

*LCD (Flat Panel) Antitrust Litig.*, No. C–07–01827 SI, 2013 WL 6055079, at *1 (N.D. Cal. Nov. 13, 2013) ("[W]hile an appeal is pending, the district court . . . may not take any action that would change the core issues before the appellate court or that could not later be undone on appeal.").

Further, although the Court does not have jurisdiction to decide the merits of the issue that is currently on appeal, "a district court has continuing jurisdiction in support of its judgment, and until the judgment has been properly stayed or superseded, the district court may enforce it." *Armstrong v. Brown*, 857 F. Supp. 2d 919, 948–49 (N.D. Cal. 2012), *order enforced* (Aug. 28, 2012), *order aff'd, appeal dismissed*, 732 F.3d 955 (9th Cir. 2013) (quotation marks and citations omitted); *see also Lara v. Secretary of Interior*, 820 F.2d 1535, 1543 (9th Cir.1987) ("The district court may issue orders pending appeal to enforce its judgment."); *Hoffman v. Beer Drivers & Salesmen's Local No. 888*, 536 F.2d 1268 (9th Cir.1976) ("Where the court supervises a continuing course of conduct and where as new facts develop additional supervisory action by the court is required, an appeal from the supervisory order does not divest the district court of jurisdiction to continue its supervision, even though in the course of that supervision the court acts upon or modifies the order from which the appeal is taken.").

**B. Plaintiff's Motion to Enforce the Judgment**

Plaintiff's motion to enforce the judgment requests that the Court enforce the Court's previously imposed 90-day deadline for Defendants to promulgate a new rule in compliance with the Magnuson-Stevens Act and the APA. Because Defendants, on August 10, 2018, appealed the Court's January 18, 2018 MSJ Order, the January 18, 2018 judgment, and the June 13, 2018 Motion to Alter Order, the Court can only grant Plaintiff's motion if doing so does not materially alter the status of the case on appeal or alter any substantial rights of the parties. *S.W. Marine*, 242 F.3d at 1166 (explaining that the district court has no power to materially alter the status of the case on appeal); *McClatchy Newspapers,* 686 F.2d at 735 (explaining that the district court may not take actions that alter any substantial rights of the parties on appeal).

Below, the Court first identifies the status of the case on appeal. Second, the Court discusses Defendants' failure to promulgate a new rule in compliance with the Magnuson-Stevens

7
Case No. 16-CV-06784-LHK
ORDER GRANTING MOTION TO ENFORCE THE JUDGMENT

United States District Court
Northern District of California

1 Act and the APA. Third, the Court analyzes whether Plaintiff's motion requests a material

2 alteration of the status of the case on appeal or alteration of any substantial rights of the parties.

### 1. The Status of the Case on Appeal

The current status of the case on appeal is as follows. The January 18, 2018 MSJ Order, the January 18, 2018 judgment, and the June 13, 2018 Motion to Alter Order collectively held that the Catch Rule, including the ACL, as well as the OFL and ABC violated the Magnuson-Stevens Act and the APA; vacated the OFL, ABC, and ACL; and remanded for the Service to issue a new rule that corrects the OFL, ABC, and ACL. Both Plaintiff and Defendants agree that the Court's orders required at least this much. *See* Mot. at 1; Opp'n at 14 ("[The Service] agrees that as long as ACL, ABC, and OFL remain vacated, the Council must work toward and ultimately propose new values and then [the Service] must approve or disapprove them consistent with the Magnuson[-Stevens] Act.").

Indeed, the Court's MSJ Order held that the Service's 2016 Catch Rule for the central subpopulation of northern anchovy, including the ACL it established, as well as the outdated values for the OFL and ABC on which the ACL was based, violated the Magnuson-Stevens Act and the APA. *See* MSJ Order. In particular, the Court found that "the OFL, ABC, and ACL are arbitrary and capricious because Plaintiff has presented substantial evidence that the OFL, ABC, and ACL are not based on the best scientific information available." *Id.* at 29. The Court also found that "it was arbitrary and capricious for the Service to fail to consider whether the OFL, ABC, and ACL still prevented overfishing in light of their direct reliance on a [maximum sustainable yield] estimate from a 1991 study that evidence in the administrative record indicated was out of date." *Id.* at 32. The Court then vacated the OFL, ABC, and ACL for violation of the Magnuson-Stevens Act and the APA and required a new rule that complies with those statutes. *Id.* at 33; Motion to Alter Order at 2; *see, e.g.*, *Sierra Club v. EPA*, 850 F. Supp. 2d 300, 303 (D.D.C. 2012) ("When a court vacates an agency's rules, the vacatur restores the status quo before the invalid rule took effect and the agency must initiate another rulemaking proceeding." (internal quotation marks and citations omitted)).

8

Case No. 16-CV-06784-LHK
ORDER GRANTING MOTION TO ENFORCE THE JUDGMENT

The parties disagree, however, on whether the Court imposed a deadline for Defendants to propose the new rule. *See* Mot. at 1 (Plaintiff asserting that the Court's order required the agency to promulgate a new rule within 90-days); Opp'n at 2, 14 (Defendants arguing that the Court did not impose a 90-day deadline and stating that "the Court should not impose a specific timeline and procedure for [the Service] to follow").

Plaintiff's summary judgment motion had requested that the Court find that the Catch Rule violates the Magnuson-Stevens Act and the APA, but also that the Court vacate the Catch Rule and remand it to the Service to complete a new rule that complies with the law within no more than 90 days from the date of the Court's MSJ Order. ECF No. 51 at 32. Contrary to Defendant's assertion otherwise, the Court granted Plaintiff's motion for summary judgment in full. *See* MSJ Order. Therefore, pursuant to the Court's January 18, 2018 MSJ Order, Defendants had 90 days to complete a new rule that complies with the Magnuson-Stevens Act and the APA.

In sum, the current status of the case on appeal is the January 18, 2018 MSJ Order, the January 18, 2018 judgment, and the June 13, 2018 Motion to Alter Order, which collectively held that the OFL, ABC, and ACL violated the Magnuson-Stevens Act and the APA; vacated the OFL, ABC, and ACL; and remanded for the Service to issue a new rule in compliance with the Magnuson-Stevens Act and the APA within a 90-day deadline from the Court's January 18, 2018 MSJ Order.

### 2. Defendants' Failure to Promulgate a New Rule in Compliance with the Magnuson-Stevens Act and the APA

To the extent Plaintiff argues that Defendants have not complied with their obligations under the Magnuson-Stevens Act and the APA, the Court agrees. Indeed, "[t]he agency's appeal of the merits decision [ ] does not resolve it from its duty to comply with the Order." Mot. at 6; *see, e.g.*, *Maness v. Meyers*, 419 U.S. 449, 459 (1975) ("If a person to whom a court directs an order believes that order is incorrect[,] the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal.").

As discussed, the Court's January 18, 2018 MSJ Order and June 13, 2018 Motion to Alter

Order remanded for the Service to issue a new rule in compliance with the Magnuson-Stevens Act and the APA. The Court finds that enforcing that obligation is within the Court's jurisdiction while the case is on appeal because, as it is part of the Court's orders, doing so will not materially alter the status of the case. *See S.W. Marine*, 242 F.3d at 1166; *see also, e.g.*, *Stein v. Wood*, 127 F.3d 1187, 1189 (9th Cir. 1997) ("A district court may, for example, retain jurisdiction . . . in aid of execution of a judgment that has not been superseded."); *Sierra Club*, 850 F. Supp. 2d at 304 (stating that where vacated "regulations do not discharge" the agency's statutory duties, the agency "remains in violation of its nondiscretionary duty to issue those regulations.").

Further, as Plaintiff observes, Defendants did not seek a stay to relieve themselves of the requirements of the Court's orders. *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1364 (9th Cir. 1987) ("Absent a stay, all orders and judgments of courts must be complied with promptly." (citation and quotation marks omitted)). Moreover, Defendants admit "that as long as ACL, ABC, and OFL remain vacated, the Council must work toward and ultimately propose new values and then [the Service] must approve or disapprove them consistent with the Magnuson[-Stevens] Act." Opp'n at 14. Despite this, a year after the Court's MSJ Order issued on January 18, 2018, Defendants have failed to offer any specific plan to comply with the Magnuson-Stevens Act and the APA. *See, e.g.*, *Flaherty v. Bryson*, 850 F. Supp. 2d 38, 54–55 (finding that the Service's responsibility to ensure fishery management plan is consistent with Magnuson-Stevens Act includes ensuring compliance with 16 U.S.C. § 1852(h)).

Therefore, to the extent Plaintiff contends that the Defendants have not complied with the Magnuson-Stevens Act and the APA on remand, the Court GRANTS Plaintiff's motion to enforce the judgment. The parties shall file a joint status update within one month of this Order explaining Defendants' plan to comply with the Magnuson-Stevens Act and the APA and what progress Defendants have made to that end. *See Hoffman*, 536 F.2d at 1276 ("We believe the rule should be, and we so hold that, in the kinds of cases where the court supervises a continuing course of conduct and where as new facts develop additional supervisory action by the court is required, an appeal from the supervisory order does not divest the district court of jurisdiction to continue its

supervision, even though in the course of that supervision the court acts upon or modifies the order from which the appeal is taken."); *see also A & M Records, Inc. v. Napster, Inc.*, 284 F.3d 1091, 1099 (9th Cir. 2002) ("The district court properly exercised its power under Rule 62(c) to continue supervision of [defendant's] compliance with the injunction.").

### 3. No Material Alteration of the Status of the Case on Appeal or Alteration of Any Substantial Rights of the Parties

As discussed, the Court on January 18, 2018 granted Plaintiff's summary judgment motion, including the 90-day deadline request, in full. *See* MSJ Order; Motion to Alter Order. Therefore, Defendant is incorrect to assert that the Court's order did not impose a 90-day deadline.

Furthermore, the parties' briefs and attachments demonstrate that Defendants have not complied with the 90-day deadline. The Court's MSJ Order was issued on January 18, 2018. 90-days from January 18, 2018 was April 18, 2018. Therefore, as of January 18, 2019, Defendants' new rule is 275 days past due.

Even if the Court gives the Defendants the benefit of the doubt and starts the 90-day time period at the time of the June 13, 2018 Motion to Alter Order, 90-days from that date was September 11, 2018. Therefore, at the time of writing the instant Order, Defendants' new rule is at least 129 days past due.

Moreover, the Court is not convinced by Defendants' explanation for the delay. The Service need not wait for new data to promulgate an updated OFL, ABC, and ACL because the Service need only use the best scientific information available. The Court's MSJ Order did not require the Service to wait for new data. The Court's MSJ Order merely found that it was arbitrary and capricious for the Service to use a 1991 study because the 1991 study was not the best scientific information available. Specifically, the following evidence demonstrated that the 1991 study was out of date: a 2015 peer-review study of the anchovy population, a 2015 survey of anchovy abundance conducted by the Service, and findings by the U.S. Fish and Wildlife Service ("FWS") and NOAA that anchovy predators are experiencing food shortages. *Id.* at 20–21, 29, 32.

Ninth Circuit law supports this Court's enforcement of the 90-day deadline this Court

11

imposed one year ago. In *S.W. Marine,* for instance, the district court had issued an injunction requiring the defendant to conduct water testing "at the surface" and to take steps to capture storm water runoff from piers in "a reasonably expeditious manner." *S.W. Marine*, 242 F.3d at 1166. While the injunction was on appeal, the district court modified the order clarifying the phrases "at the surface" and "reasonably expeditious" by substituting "testing of the surface 'microlayer' for testing 'at the surface'" and by substituting an 18-month deadline for the requirement of "reasonably expeditious." *Id.* at 1165. The Ninth Circuit found that the modifications made by the district court "did not materially alter the status of the consolidated appeal," and that such alterations were proper pursuant to the former Rule 62(c) (now Rule 62(d)). *Id.* at 1167. The Ninth Circuit further explained that the modifications "left unchanged the core questions before the appellate panel deciding the" appeal: "Whether the district could permissibly: (1) require any water column testing, including testing 'at the surface,' or (2) require the construction of a pier storm water capture facility." *Id.* These core questions were left unchanged because "[i]f the core requirements of water column testing and pier storm water capture were ultimately reversed on appeal, the 'microlayer'" requirement and the 18-month deadline would also "effectively be reversed, leaving none of Southwest Marine's substantial rights affected after the conclusion of the consolidated appeal." *Id.*

The Court's jurisdiction on appeal in the instant case is even clearer than the district court's jurisdiction in *S.W. Marine* because in the instant case, the Court previously granted Plaintiff's motion for summary judgment, including the specific 90-day deadline. Therefore, Plaintiff's instant motion does not even request a modification. Instead, Plaintiff asks the Court to enforce the orders and judgment as they are; granting such request would thus not materially alter the status of the case on appeal or alter any substantial rights of the parties.

Further, it bears repeating that Defendants did not seek a stay to relieve themselves of the requirements of the Court's orders. "[A] district court is not deprived of power to require action by a fixed date simply because that date may arrive before appeals are exhausted. If compliance with the injunction threatens to deprive a party of the benefit of a successful appeal, it is up to that party

12

to obtain a stay of the judgment." *S.W. Marine*, 242 F.3d at 1168 (citing *Holloway v. United States*, 789 F.2d 1372, 1373–74 (9th Cir. 1986)).

Therefore, the Court GRANTS Plaintiff's motion to enforce the judgment.

### III. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's motion to enforce the judgment. Defendants shall promulgate a new rule in compliance with the Magnuson-Stevens Act and the APA within 90-days of the Court's instant Order, which is Thursday, April 18, 2019.

**IT IS SO ORDERED.**

Dated: January 18, 2019

LUCY H. KOH
United States District Judge